COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.  2-05-459-CR

        2-05-460-CR

        2-05-461-CR

STEVE SCOTT WEST APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Steve Scott West appeals his convictions and sentences for possession of pseudoephedrine with intent to manufacture methamphetamine, manufacture of more than 400 grams of methamphetamine, and possession of more than 400 grams of methamphetamine with intent to deliver.  In four points, Appellant contends that the trial court erred in denying his motion to suppress, that the evidence at trial was legally and factually insufficient to support his convictions, and that the State improperly commented on his failure to testify.  We will affirm.

II.  Procedural and Factual Background

On September 18, 2003, a waste management employee contacted police to report five suspicious trash bags that he had discovered while emptying a dumpster near a Fort Worth area apartment complex.
(footnote: 2)  Officers from the Fort Worth narcotics unit were dispatched to the scene and quickly discovered that the bags contained various chemicals and other items that are commonly associated with clandestine labs engaged in the illicit manufacture of methamphetamine.  While going through the contents of these bags, officers also discovered a mortgage receipt and a telephone bill in Appellant’s name, as well as a pizza delivery receipt in the name of “Brandi West.”  Both the telephone bill and the pizza receipt listed 4854 Ledgestone Court, Fort Worth, Texas as their corresponding service addresses.   

Based on this information, Fort Worth police obtained and executed a search warrant on the Ledgestone address in the early morning hours of September 24, 2003.
(footnote: 3)  During the course of the search, officers found methamphetamine in both liquid and powder forms, as well as numerous other items typically used to manufacture methamphetamine such as iodine prill, large quantities of cold tablets containing pseudoephedrine, sulphuric and muriatic acid, lye, garden sprayers that had been converted into chlorine gas generators, balance beam scales, Ziploc baggies, and multiple cans of acetone, Coleman fuel, and methanol.  Officers also discovered physical evidence linking Appellant to the scene which enabled them to obtain a warrant for his arrest. 

On November 26, 2003, law enforcement officials were dispatched to a residence located at 2408 Perkins in Arlington after receiving a tip that Appellant was at that location.
(footnote: 4)  Upon arriving at the scene, officers were unable to locate Appellant but soon learned from an employee of the homeowner that he had been in the area.  Officers also discovered a car in the driveway of the residence that matched the description of the car Appellant was believed to have been driving.  After canvassing the neighborhood, officers eventually located Appellant standing in the street several blocks away from the Perkins address and took him into custody.  A search incident to arrest revealed that Appellant was in possession of a glass pipe and a set of keys that fit the locks of the car found in the driveway of the Perkins address.  Police impounded the car and inventoried its contents after the homeowner’s employee requested that the car be removed from the property.
(footnote: 5)  During the course of the inventory search, officers discovered several packages of pseudoephedrine along with other items, similar to those found at the Ledgestone address, that are typically associated with the manufacture of methamphetamine. 

Appellant was charged in three separate cases with two counts of possession of pseudoephedrine with the intent to manufacture methamphetamine, one count of manufacture of more than 400 grams of methamphetamine, and one count of possession of more than 400 grams of methamphetamine with intent to deliver.
(footnote: 6)  All three cases were consolidated for trial, and a jury ultimately convicted Appellant on all four counts. 

III.  Motion to Suppress

In his third point, Appellant asserts that the trial court abused its discretion in overruling his motion to suppress the evidence police discovered while conducting the inventory search of his car.  Specifically, Appellant argues that because no reasonable connection existed between his arrest and the car, both the impoundment and the subsequent inventory search were improper. 

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.

An inventory search is permissible under the federal and state constitutions if it is conducted pursuant to a lawful impoundment.  
South Dakota v. Opperman
, 428 U.S. 364, 375-76, 96 S.Ct. 3092, 3100 (1976); 
Benavides v. State
, 600 S.W.2d 809, 810 (Tex. Crim. App. [Panel Op.] 1980).  For an impoundment to be lawful, the seizure of the vehicle must be reasonable under the Fourth Amendment.  
Benavides
, 600 S.W.2d at 811.  Courts have identified a number of circumstances in which law enforcement may reasonably impound an automobile, such as when the driver is under custodial arrest and no other alternative is available to insure the vehicle’s protection. 
 Id.
; 
Delgado v. State
, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986); 
Daniels v. State
, 600 S.W.2d 813, 815 (Tex. Crim. App. [Panel Op.] 1980). 

During the suppression hearing, the trial court heard testimony from Fort Worth police officer Ernest Tomayo regarding the facts and circumstances leading up to the car being impounded.  Tomayo testified that when he initially arrived at the Perkins address, the car was unoccupied and parked in the driveway.  Tomayo stated that he never saw Appellant in the car or operating it in any way.  However, Tomayo explained that he spoke with Summer Majors, an employee of the homeowner, who informed him that Appellant had driven the car to the residence and that she no longer wanted the vehicle on the property.  Tomayo also testified that, after Appellant’s arrest, officers discovered a set of car keys in Appellant’s pocket and that he then admitted driving the car to the home.  Therefore, in accordance with Majors’s request, police impounded the car.  Thereafter, they inventoried its contents. 

In this case, Majors, as representative of the homeowner, advised police that Appellant could not leave his car in the driveway and requested that the vehicle be removed from the premises.  Although these orders did not come directly from the homeowner, it was not incumbent upon the officers to locate and speak with the owner of the house to determine whether the car could remain in the driveway.  
See Mayberry v. State
, 830 S.W.2d 176, 180 (Tex. App.—Dallas 1992, pet. ref’d).  Additionally, the officers had no duty to independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist.  
Id.  
Therefore, in light of Appellant’s arrest and Majors’s request that the vehicle not remain on the property, it cannot be said that the officers acted unreasonably in seizing Appellant’s car after he was taken into custody.

Appellant relies on the court of criminal appeals’ holding in 
Benavides 
to support his position that because there was no reasonable connection between his arrest and the vehicle, the impoundment was unlawful.  
Benavides,
 600 S.W.2d at 812.  However, 
Benavides 
is distinguishable from the case at bar.  In 
Benavides
, the police found Appellant and his wife both shot on the garage floor of a residence.  
Id. 
at 810.  
Appellant’s car was later found locked and legally parked about two blocks from the place of the shooting.  
Id.  
The vehicle was then impounded and searched without the benefit of a search warrant.  
Id.  
A suicide note found in the car was later admitted into evidence at Appellant’s criminal trial to support the State’s theory of murder and attempted suicide.  
Id.
  At trial, the officer that authorized the impoundment testified that the car was impounded solely for safekeeping in accordance with Dallas police departmental procedures that required all officers to take an accused’s vehicle into custody following the accused’s arrest.  
Id. 
at 811.  In finding the impoundment unlawful, the court explained that the mere arrest of a defendant cannot be construed to authorize the seizure of his automobile when the arrest took place two or more blocks away from the vehicle.  
Id. 
at 812.  Rather, there must be some reasonable connection between the arrest and the vehicle when the arrest serves as the sole justification for the subsequent impoundment.  
See id.

However, in this case, the impoundment was not premised solely upon Appellant’s arrest.  As outlined above, officers impounded the vehicle only after an employee of the homeowner requested that it be removed from the premises.   Therefore, because Appellant’s vehicle was no longer welcome to remain on the property following his arrest, the rationale in 
Benavides 
is inapposite.  
Accordingly, we overrule Appellant’s third point. 

IV.  Legal and Factual Sufficiency

In his first two points, Appellant contends that the evidence is legally and factually insufficient to support his convictions.  Specifically, Appellant argues that the State failed to affirmatively link him to either the pseudoephedrine found in the car during the search at the Perkins address or the contraband discovered at the Ledgestone residence. 

A.  Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse on the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”  
Id.
  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id.
  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.” 
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id.
 at 9.

B.  “Links” Required Under the “Affirmative Links” Rule

In order for the State to obtain a conviction on the manufacturing charge, it was required to prove that Appellant knowingly manufactured methamphetamine in an amount of more than 400 grams, including adulterants and dilutants. 
See
 
Tex. Health & Safety Code Ann.
 § 481.112 (Vernon 2003). 

As to the possession charges, the State was required to prove that Appellant  (1) exercised control, management, or care over the substance and (2) knew the matter possessed was contraband.  
Poindexter v. State
, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  When the accused is not in exclusive possession of the place where the substance is found, his knowledge of and control over the contraband cannot be established unless there are additional independent facts and circumstances which affirmatively link him to the contraband.
(footnote: 7)  
Id. 
at 406.  This “affirmative links rule” is designed to protect the innocent bystander from conviction based solely upon his proximity to someone else’s drugs.  
Id.  
Both manufacture and possession can be established through circumstantial evidence.  
McGoldrick v. State
, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).
 
 Whether the State’s evidence linking a defendant to the contraband in question is direct or circumstantial, it must establish, to the requisite level of confidence, that the accused’s connection with the drug was more than just fortuitous.  
Poindexter, 
153 S.W.3d at 
405-06.  It is not the number of affirmative links present that is important, but rather the “logical force” that they create to prove that the defendant committed the crime.  
Nhem v. State
, 129 S.W.3d 696, 699-700 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  

C.  Analysis

The record in this case contains ample evidence to affirmatively link Appellant to the contraband found at the Ledgestone residence and the manufacturing going on inside that home. 
 In addition to the evidence previously outlined, officers at trial testified that the search of the home revealed 137 boxes of tablets containing pseudoephedrine and numerous containers housing over 522 grams of methamphetamine.  Additionally, officers also discovered Heet fuel and other chemicals typically associated with the illicit manufacture of methamphetamine.  Many of these items were found in plain view and strewn all over the house.  Although Appellant was not at the Ledgestone home at the time of the search, officers testified that during the search they discovered a photograph of Appellant, a locksmith receipt made out to Appellant listing 4854 Ledgestone Court as his address, a letter addressed to Appellant at 4854 Ledgestone Court, a check stub bearing Appellant’s name, and gambling receipts made out to Appellant.  Investigators also recovered Appellant’s fingerprints from a can of acetone containing liquid methamphetamine that was found in the home. 

Moreover, the evidence in the record also sufficiently links Appellant to the pseudoephedrine discovered in the car parked in the driveway of the Perkins address.  At the time of his arrest, Appellant was in possession of the keys to the car, which reasonably implies his control over the contraband found inside.  
Christopher v. State
, 639 S.W.2d 932, 935 (Tex. Crim. App. [Panel Op.] 1982), 
overruled on other grounds by Preston v. State
, 700 S.W.2d 227, 230 (Tex. Crim. App. 1985).  Additionally, Officer Tamayo testified that witnesses at the scene informed him that they had, in fact, seen Appellant operating the vehicle prior to his arrest.  Tamayo stated that the search of the car yielded two boxes of forty-eight-count tablets containing pseudoephedrine, as well as a bottle of Coleman fuel, Heet, and other items similar to those recovered at the Ledgestone address, which are commonly used to manufacture methamphetamine.  

Viewing the evidence in the light most favorable to the jury’s verdict, we conclude that the evidence of affirmative links is legally sufficient to support the verdict.  In addition, the affirmative links evidence is not too weak or contradictory to support the verdict beyond a reasonable doubt.  Consequently, we overrule Appellant’s first two points.

V.  Comment on Defendant’s Failure to Testify

In his fourth point, Appellant complains that the State, during closing argument at the punishment phase, improperly commented on his right to remain silent, thus violating his state and federal constitutional rights against self-incrimination and article 38.08 of the code of criminal procedure.  
See 
U.S. Const.
 amend V; 
Tex. Const.
 art. I, § 10; 
Tex. Code Crim. Proc. Ann.
 art. 38.08 (Vernon Supp. 2006).
   
 

The record indicates that at punishment Appellant called his brother, Robert West, to testify regarding their childhood upbringing and family life. Robert testified that he and Appellant were raised in a relatively poor family in Illinois.  Nevertheless, he stated that after completing an apprenticeship with his father, Robert moved to Texas and eventually became the owner of a successful concrete company in the Dallas area.  When questioned regarding his current relationship with Appellant, Robert stated that he has not known his brother in the past five years.  Robert testified that Appellant was incarcerated in 2001 and that since that time Robert has spent a great deal of time in Illinois helping his family overcome a series of traumatic events which have occurred—the loss of his sister to cancer four years ago, the death of his father as the result of a brain aneurysm two years later, and the bad health of his mother.  In its closing, the State argued:

I would ask you also not to make the mistake of giving this [d]efendant the benefit of his brother’s good life and his family’s misfortune because it appears that he wasn’t very involved in that misfortune.  The brother was going to Illinois to see and take care of the mother and the sister.  Where was [Appellant]? 

The trial court overruled Appellant’s counsel’s objection that the argument constituted a comment on Appellant’s failure to testify.  

To determine if a prosecutor’s comment constituted an impermissible reference to an accused’s failure to testify, we must decide whether the language used was manifestly intended or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant’s failure to testify.  
Tex. Code Crim. Proc. Ann.
 art. 38.08; 
see Bustamante v. State
, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); 
Fuentes v. State
, 991 S.W.2d 267, 275 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999).  The offending language must be viewed from the jury’s standpoint, and the implication that the comment referred to the accused’s failure to testify must be clear.  
Bustamante
, 48 S.W.3d at 765; 
Swallow v. State
, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992).  A mere indirect or implied allusion to the defendant’s failure to testify does not violate the accused’s right to remain silent.  
Wead v. State
, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); 
Patrick v. State
, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995), 
cert. denied
, 517 U.S. 1106 (1996).

In this case, we conclude that the State’s jury argument was not a comment on Appellant’s failure to testify.  In his closing, Appellant’s counsel argued for leniency and asked the jury to sentence Appellant to the minimum fifteen year prison term.  The State simply responded to this argument by pointing out that Appellant was not entitled to any leniency despite the difficult times that Appellant’s family had previously endured.  The State’s comments served to remind the jury that Appellant was incarcerated during those times and that he should not reap the benefits of any sympathy the jury may feel for his family.  The State’s language was not manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the defendant’s failure to testify.  
Bustamante
, 48 S.W.3d at 765.  Therefore, Appellant’s fourth point is overruled.

VI.  Conclusion

Having overruled each of Appellant’s points, we affirm the trial court’s judgments.

PER CURIAM

PANEL F: GARDNER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 1, 2007

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The bags were reported as having several funnels sticking out of them.

3:
Although the residence was unoccupied at the time the warrant was initially served, a female by the name of Brandi Morris arrived during the search and was taken into custody.  

4:
Officers also received a description of Appellant, as well as a description of the car he was believed to be driving. 

5:
Officers conducted the inventory search without a warrant and without Appellant’s consent. 

6:
While one of the counts of possession of pseudoephedrine arose out of the November 2003 search conducted on Appellant’s car at the Perkins address, all other charges stemmed from the September 2003 search of the Ledgestone home in Fort Worth.   

7:
The court of criminal appeals recently decided to refer to such evidence simply as “links,” noting that the term “affirmative” adds nothing to the court’s analysis under the “affirmative links rule.”  
Evans v. State
, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).