02-09-385-CR
















 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00385-CR

 

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 CORY RAY MOLDER
 
 
  
 
 
 APPELLEE
 
 


 

 

------------

 

FROM THE 355TH
 DISTRICT COURT OF HOOD
COUNTY

 

------------

 

OPINION

 

------------

          In four related points, the State
appeals the trial court’s order granting appellee Cory Ray Molder’s motion to
suppress evidence that the police found in his truck.  The State contends that officers found the
evidence during a legal inventory.  We affirm.

Background Facts

          One morning in June 2009, Texas
Department of Public Safety (DPS) Trooper Earl (“Dub”) Gillum
Jr. stopped at a gas station to wash his windshield. While Trooper Gillum was there, Denisa Rudnicky, a clerk from the station, walked outside, began
talking to Trooper Gillum, and received a call on her
cell phone from appellee.  Trooper Gillum heard appellee scream to Rudnicky that he was going to “f--- [her] up” and “ram
[her] vehicle.”  Trooper Gillum put the phone to his ear and said, “This is Trooper
Dub Gillum with the highway patrol.”  Appellee hung up.

          Trooper Gillum
traced the call to a Granbury motel, and he called appellee’s room.  Trooper Gillum told
appellee that he had heard the threats appellee had made,
and Trooper Gillum said that he was going to come to
the motel to talk to appellee.  Appellee
said that he would leave the motel.  Trooper Gillum
called dispatch, and two Granbury Police Department officers went to the motel
to ensure that appellee did not leave.

          When Trooper Gillum
arrived at the motel, appellee was outside in a parking lot between the motel
and another building that contained Song Hays Chinese Restaurant.  An officer gave appellee’s keys to Trooper Gillum.  Appellee was
shirtless and handcuffed.  His eyes were
dilated and moving rapidly as if he was “high on some type of drug.”  Trooper Gillum told
appellee that he was under arrest for assault by
threat.  Appellee expressed concern about
the motel owner’s throwing his possessions away, but Trooper Gillum told appellee that would
not happen.  One of the officers took
appellee to jail.

          Trooper Gillum
decided to take an inventory of appellee’s truck—which was parked and locked in
a private lot near the motel but closer to Song Hays—and then have a wrecker
transport the truck to an impound lot.  Two
other troopers brought Trooper Gillum an HQ-109 inventory
form, which must be completed as part of DPS’s policy, and helped Trooper Gillum inventory the truck.

          During the inventory, Trooper Gillum found a blue cloth bag that had a rope around it and
smelled like marijuana.  He opened the
bag and saw a cigarette box.  Inside the
box, he discovered three clear plastic baggies containing a crystal white
substance that he believed to be methamphetamine.  Also inside the blue cloth bag, Trooper Gillum found another baggie with two prescription pills,
$166, an electronic gram scale, a glass pipe that
could be used to smoke methamphetamine, a metal pipe that contained marijuana
residue, a gas lighter, and approximately thirty empty plastic baggies.[1]

          A Hood County grand jury indicted appellee
for possession of methamphetamine and possession of methamphetamine with intent
to deliver.[2]  Appellee filed a motion to suppress the
evidence found in his truck, arguing that officers had violated his
constitutional and statutory rights by searching the truck without a warrant or
probable cause.  He relied on the United
States Supreme Court’s decision in Arizona
v. Gant.[3]  The trial court held a hearing, at which the
State called Trooper Gillum in an attempt to prove
that he had found the evidence while conducting a lawful inventory.  The trial court granted appellee’s motion,
and the State filed notice of this appeal.[4]

The Suppression of the Evidence

          In four points, the State argues that
the trial court erred by granting appellee’s motion to suppress.  Specifically, the State contends that the
court erred by finding that (1) Trooper Gillum did
not conduct the inventory under DPS’s general policy, (2) the impoundment of
appellee’s truck was unreasonable and therefore illegal under federal and state
law, and (3) Gant affects the
legality of inventories.

Standard of review

          We review a trial court’s ruling on a
motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).  In reviewing
the trial court’s decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex.
App.—Fort Worth 2003, no pet.). 
The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.  Wiede v. State, 214 S.W.3d 17,
24–25 (Tex. Crim. App. 2007); State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex.
Crim. App. 2006).

          Therefore, we give almost total
deference to the trial court’s rulings on (1) questions of historical
fact, even if the trial court’s determination of those facts was not based on
an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Amador, 221 S.W.3d at 673;
Montanez v. State, 195 S.W.3d 101,
108–09 (Tex. Crim. App. 2006); Johnson v.
State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court’s rulings on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652–53.

          Stated another way, when reviewing the
trial court’s ruling on a motion to suppress, we must view the evidence in the
light most favorable to the ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court’s ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818–19. 
We then review the trial court’s legal ruling de novo unless its
explicit fact findings that are supported by the record are also dispositive of
the legal ruling.  Id. at 818.  We must uphold the trial court’s ruling if it
is supported by the record and correct under any theory of law applicable to
the case even if the trial court gave the wrong reason for its ruling.  State
v. Stevens, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (“Our task .
. . is to determine whether the trial court could have reasonably denied
appellant’s motion to suppress given the record evidence and given the
applicable federal and state law.”), cert.
denied, 541 U.S. 974 (2004).

The legality of Trooper Gillum’s
inventory

          The United States and Texas
constitutions protect against unreasonable searches by government officials.  U.S. Const. amend. IV; Tex. Const. art. I, § 9.  Once a defendant shows that a search occurred
without a warrant, the burden shifts to the State to prove that the search was
reasonable under the totality of the circumstances.  Amador, 221 S.W.3d at 672–73; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).  Trooper Gillum
found the items in appellee’s truck without a warrant.

          Thirty-five years ago, the Supreme
Court recognized that in some circumstances, the police’s
standardized, routine inventory of a vehicle may be reasonable and valid.  South Dakota v. Opperman, 428 U.S. 364,
375–76, 96 S. Ct. 3092, 3100 (1976). 
Eleven years later, the Supreme Court repeated that holding.  Colorado
v. Bertine, 479 U.S. 367, 369, 107 S. Ct. 738,
739–40 (1987); see also Illinois v.
Lafayette, 462 U.S. 640, 643, 103 S. Ct. 2605, 2608 (1983) (explaining that
the absence of a warrant in an inventory is immaterial to the inventory’s
reasonableness).

          In Opperman, the Vermillion, South
Dakota police had towed a car to an impound lot because it was unoccupied and
illegally parked.  428
U.S. at 365–66, 96 S. Ct. at 3095. 
At the lot, an officer, using a standardized form, inventoried the
contents of the car, which included looking in an unlocked glove compartment,
and found marijuana.  Id. at 366, 96 S. Ct. at 3095.  After Opperman came
to the lot to claim his property, the police charged him with possessing
marijuana, and he filed a motion to suppress the evidence found during the
inventory.  Id. at 366, 96 S. Ct. at 3095–96.  The trial court denied his motion, and a jury
convicted him, but the South Dakota Supreme Court reversed the conviction,
holding that the marijuana had been obtained in violation of the Fourth
Amendment.  Id. at 366–67, 96 S. Ct. at 3095–96.  In reversing the South Dakota court, the
United States Supreme Court stated in part,

          When vehicles are
impounded, local police departments generally follow a routine practice of
securing and inventorying the automobiles’ contents.  These procedures developed in response to
three distinct needs:  the protection of
the owner’s property while it remains in police custody . . . ; the protection [of]
the police against claims or disputes over lost or stolen property . . . ; and
the protection of the police from potential danger . . . .  The practice has been viewed as essential to
respond to incidents of theft or vandalism. . . . 

          . . . .

          The Vermillion police
were indisputably engaged in a caretaking search of a lawfully impounded
automobile.  The inventory was
conducted only after the car had been impounded for multiple parking
violations.  The owner, having left his
car illegally parked for an extended period, and thus subject to impoundment,
was not present to make other arrangements for the safekeeping of his
belongings.  The inventory itself was
prompted by the presence in plain view of a number of valuables inside the car.
. . .

          On this record we
conclude that in following standard police procedures, prevailing throughout
the country and approved by the overwhelming majority of courts, the conduct of
the police was not “unreasonable” under the Fourth Amendment.

Id. at 368–76, 96 S. Ct. at 3097–3100
(citations and footnotes omitted).

          Similarly, in Bertine, 

a police officer in Boulder, Colorado, arrested [Bertine] for driving while under the influence of alcohol.  After Bertine was
taken into custody and before the arrival of a tow truck to take Bertine’s van to an impoundment lot, a backup officer inventoried
the contents of the van.  The officer
opened a closed backpack in which he found controlled substances, cocaine
paraphernalia, and a large amount of cash. . . .

          The backup officer
inventoried the van in accordance with local police procedures, which require a
detailed inspection and inventory of impounded vehicles.  He found the backpack directly behind the frontseat of the van.  Inside the pack, the officer observed a nylon
bag containing metal canisters.  Opening
the canisters, the officer discovered that they contained cocaine, methaqualone tablets, cocaine paraphernalia, and $700 in
cash.  In an outside zippered pouch of
the backpack, he also found $210 in cash in a sealed envelope.  After completing the inventory of the van, the
officer had the van towed to an impound lot and brought the backpack, money,
and contraband to the police station.

          After Bertine
was charged with [various offenses], he moved to suppress the evidence found
during the inventory search on the ground, inter
alia, that the search of the closed backpack and containers exceeded the
permissible scope of such a search under the Fourth Amendment.[[5]]

479 U.S. at 368–69, 107 S. Ct. at 739–40.  The Supreme Court held that the inventory was
lawful, reasoning,

[I]nventory searches are now a well-defined
exception to the warrant requirement of the Fourth Amendment.  The policies behind the warrant requirement
are not implicated in an inventory search, . . . nor
is the related concept of probable cause . . . .

          . . . .

          In the present case, as
in Opperman
and Lafayette, there was no showing
that the police, who were following standardized procedures, acted in bad faith
or for the sole purpose of investigation.  In addition, the governmental interests
justifying the inventory searches in Opperman and Lafayette
are nearly the same as those which obtain here.  In each case, the police were potentially
responsible for the property taken into their custody.  By securing the property, the police
protected the property from unauthorized interference. . . .

          . . . .

          . . .  We conclude that . . . reasonable police
regulations relating to inventory procedures administered in good faith satisfy
the Fourth Amendment . . . .

Id. at 371–74, 107 S. Ct. at 741–42
(citations and footnotes omitted); see
also Jurdi v. State, 980 S.W.2d 904, 906, 908
(Tex. App.—Fort Worth 1998, pet. ref’d) (relying on Bertine to
overrule a defendant’s challenge to the denial of his motion to suppress
evidence found during an inventory of a car); Starlling v. State, 743 S.W.2d 767, 772 (Tex. App.—Fort Worth 1988, pet. ref’d) (citing Opperman to hold that evidence obtained during an inventory
was admissible).

          The trial court recognized the existence
of the inventory exception to the warrant requirement but held that it is not
applicable to this case.  To support that
decision, the court concluded that Trooper Gillum’s
inventory was not authorized because, in sum,

·       
it was not conducted according to DPS’s general policy because DPS did
not have possession of the truck or an obligation to protect it or its contents;

 

·       
it was not reasonable under federal and state law because the truck was
not in DPS’s possession, it was not creating a traffic hazard, it was parked
and locked, and there were reasonable alternatives to impoundment because (1)
appellee’s confinement was expected to be short, and the truck would have been
protected by leaving it parked and locked; and (2) appellee’s family was at the
arrest site;[6] and

 

·       
Gant affects the validity of an
inventory that would otherwise be authorized by Bertine.

 

The
State’s four points essentially attack these conclusions.  We need not address any of these reasons for
suppression, however, because we conclude that the trial court’s decision must
be affirmed on a different, more specific legal basis.  See Armendariz, 123 S.W.3d
at 404.

          In
appellee’s brief, he argues,

          It is noteworthy that [Trooper] Gillum
had to pass through two closed containers during his inventory search before he
arrived at several clear baggies of meth. 
The first closed container was a blue bag with a white rope around
it.  The second container was a cigarette
box.  There was no testimony developed by
the State as to what the standard criteria was for the search policy regarding
containers, and closed containers.  Part
of the reasonableness of an inventory search derives from its standard and
clearly defined manner.

 

          After it decided Opperman and Bertine, the
Supreme Court readdressed inventories in Florida
v. Wells.  495 U.S.
1, 4, 110 S. Ct. 1632, 1635 (1990). 
In Wells,

          A Florida Highway Patrol trooper stopped respondent Wells
for speeding.  After smelling alcohol on
Wells’ breath, the trooper arrested Wells for driving under the influence.  Wells then agreed to accompany the trooper to
the station to take a breathalyzer test.  The trooper informed Wells that the car would
be impounded and obtained Wells’ permission to open the trunk.  At the impoundment facility, an inventory
search of the car turned up two marijuana cigarette butts in an ashtray and a
locked suitcase in the trunk. Under the trooper’s direction, employees of the
facility forced open the suitcase and discovered a garbage bag containing a
considerable amount of marijuana.

 

          Wells was charged with possession of a controlled
substance.  His motion to suppress
the marijuana on the ground that it was seized in violation of the Fourth
Amendment to the United States Constitution was denied by the trial court. . .
.  On appeal, the Florida District Court
of Appeal . . . held . . . that the trial court erred in denying suppression of
the marijuana found in the suitcase.  Over
a dissent, the Supreme Court of Florida affirmed.

 

Id. at 2–3,
110 S. Ct. at 1634.  The
United States Supreme Court affirmed the suppression of the marijuana that was
found in the closed suitcase, reasoning,

          Our view that standardized criteria . . . or established routine . . . must regulate the opening of containers
found during inventory searches is based on the principle that an inventory
search must not be a ruse for a general rummaging in order to discover
incriminating evidence.  The policy or
practice governing inventory searches should be designed to produce an
inventory.  The individual police officer
must not be allowed so much latitude that inventory searches are turned into “a
purposeful and general means of discovering evidence of crime[.]”

 

          . . . .  

 

          In the present case, the
Supreme Court of Florida found that the Florida Highway Patrol had no policy
whatever with respect to the opening of closed containers encountered during an
inventory search.  We hold that absent
such a policy, the instant search was not sufficiently regulated to satisfy the
Fourth Amendment and that the marijuana which was found in the suitcase,
therefore, was properly suppressed by the Supreme Court of Florida.

 

Id. at 4–5,
110 S. Ct. at 1635 (citations omitted and emphasis added).  Thus, opening closed containers while
conducting an inventory is lawful only when there is evidence of a policy or
established procedure that allows for such. 
See id.; Rothenberg v. State, 176 S.W.3d 53, 57
(Tex. App.—Houston [1st Dist.] 2004, pet. ref’d)
(“[T]he Fourth Amendment . . . allows police to open closed—even locked—containers
as part of the inventory of an automobile, as long as they do so in accordance
with standardized police procedures”); Richards
v. State, 150 S.W.3d 762, 771 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d) (en banc) (stating that either “standardized
criteria or established routine must regulate the opening of closed containers
during an inventory search” and upholding a search because an officer testified
that he was trained to inventory any container he had access to); see also United States v. Salmon, 944
F.2d 1106, 1121 (3d Cir. 1991) (citing Wells
and holding that based on “the lack of evidence of any criteria or established
routine regarding the scope of an inventory search, we conclude that the
searching officers had impermissible discretion regarding the . . . treatment
of closed containers”), cert. denied,
502 U.S. 1110 (1992); cf. Perry v. State, 933 S.W.2d 249,
252–53 (Tex. App.—Corpus Christi 1996, pet. ref’d)
(distinguishing the holding in Wells
and holding that an inventory of an ashtray was permissible because it was not
a closed container); 1975 Chevrolet v.
State, 801 S.W.2d 565, 566–67 (Tex. App.—Dallas 1990, writ denied)
(upholding the inventory of a closed container because the police department’s
policy was to open locked containers if the police had access to the keys of
the container).

          The burden is on the
State to show a lawful inventory.  State v. Giles, 867
S.W.2d 105, 108 (Tex. App.—El Paso 1993, pet. ref’d).  Here, the State did not provide the trial
court with a written inventory policy.[7]  Instead, the sole evidence of DPS’s inventory
policy came from testimony by Trooper Gillum when the
State asked him the following questions:

          Q  . . .  Let me ask you, does the Department of Public
Safety have prescribed procedures for an arrest and when there’s a vehicle
involved and . . . people’s property?

          A  Yes, ma’am.  It’s our policy that the arresting officer take control and secure that property in the safest
way possible.

          Q  Okay.

          A  That property is now my responsibility as the
arresting officer, so I have to take care of that property and do it through
policy with an inventory and a written inventory and witnesses and filing of
that inventory.

          . . . .

          Q  Did you feel safe in leaving his vehicle
there?

          A  No, ma’am, I didn’t.  I didn’t know what was in the vehicle, so I
inventoried it and then called the wrecker to store it in a safe, secure place.[[8]]

          Trooper Gillum’s
concise testimony establishes that DPS has a general policy to inventory
vehicles associated with defendants’ arrests, but the testimony relates nothing
about the scope of the policy or how it affects closed containers such as appellee’s
roped blue bag.  DPS’s actual inventory
policy may require opening all containers or some containers under specific
circumstances, but those details were not proved in this case.

          We recognize that courts have held
that an officer does not need to specifically mention “closed containers” to
establish a policy regarding them.  See, e.g., United States v. Mundy, 621
F.3d 283, 290–93 (3d Cir. 2010) (explaining that “[s]tandardized
criteria or routine may adequately regulate the opening of closed containers
discovered during inventory searches without using the words ‘closed container’
or other equivalent terms” and holding that a policy had sufficiently described
the scope of an inventory to allow the opening of a shoebox).  But we hold that in this case, Trooper Hall’s
testimony, as the sole evidence at the suppression hearing, was too barren to
show any particular standardized criteria or routine concerning the scope of the
inventory; the testimony is therefore insufficient for us to infer the extent
of DPS’s policy regarding closed containers. 
Also, we conclude that we cannot infer DPS’s policy to open closed
containers from the mere fact that Trooper Hall did so; such an inference would
eviscerate the requirement described in Wells.

          Because the evidence at issue was
found within a closed container, and the State did not meet its burden to show
the legality of the inventory of that container, we hold that the trial court
did not err by granting appellee’s motion to suppress, and we overrule all of
the State’s points that contest, on other grounds, the trial court’s suppression
decision.  See Wells, 495 U.S. at 4–5, 110 S. Ct. at 1635; Armendariz, 123 S.W.3d at 404.

Conclusion

          Having overruled all of the State’s
points, we affirm the trial court’s order granting appellee’s motion to
suppress.

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

 

MEIER,
J. filed a concurring opinion.

 

PUBLISH

 

DELIVERED:  February 24, 2011















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00385-CR

 

 


 
 
 The State of Texas
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Cory Ray Molder
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM THE 355th District Court
OF Hood COUNTY

----------

 

CONCURRING
OPINION

----------

 

          I concur in the result reached by the
majority opinion, but I write separately to voice my belief that the trial court’s
ruling to suppress the evidence found during the inventory of Molder’s truck
was correct for the additional reason that the truck should not have been
impounded in the first place.  The
majority holds that because the State did not offer evidence of any particular
standardized criteria concerning the scope of inventory searches that would
lead to a conclusion regarding DPS’s policy as to opening closed containers,
the State failed to meet its burden to show the legality of the inventory of a
closed container found in Molder’s vehicle. 
I join in the majority’s analysis and ruling concerning closed
containers under the facts of this case.

I write
separately, however, to express my view and opinion that regardless of what
DPS’s policy is toward closed containers, an inventory of Molder’s vehicle
should have never occurred.  And that is
what the trial court specifically found.

An
inventory search is permissible under the federal and state constitutions if it
is conducted pursuant to a lawful impoundment. 
South Dakota v. Opperman, 428 U.S. 364, 375–76, 96 S. Ct. 3092, 3100
(1976); Benavides v. State, 600
S.W.2d 809, 810 (Tex. Crim. App. [Panel Op.] 1980).  For an impoundment to be lawful, the seizure
of the vehicle must be reasonable under the Fourth Amendment.  Benavides,
600 S.W.2d at 811. 
Courts have identified a number of circumstances in which law
enforcement may reasonably impound an automobile; principal among these
circumstances is whether there is some reasonable connection between the arrest
and the vehicle.  Id.; Delgado
v. State, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986); Daniels v. State, 600 S.W.2d 813, 815 (Tex. Crim. App. [Panel Op.]
1980).  But to be sure, an
inventory cannot simply be a “ruse for a general rummaging in order to discover
incriminating evidence.”  Florida v. Wells, 495
U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990).

According
to the trial court’s findings of facts, Molder’s truck was parked and locked
approximately 175 feet from Molder’s hotel room in front of a nearby
business—as the trial court phrased it, “a private parking lot and not the
street.”  Molder’s truck faced the
street, but otherwise was not impeding the flow of traffic nor was it a danger
to public safety.  The trial court found
that the distance between where Molder was detained and eventually arrested was
approximately 100 feet from his truck. 
The trial court further found that there was no reasonable connection
between the arrest and Molder’s truck; that Molder had not consented to the
search of his truck; that the truck was not blocking traffic; that no exigent
circumstances existed to authorize the search of Molder’s truck; and that there
was “no likely evidence of ‘assault by threat’ to be found” in the truck and
that there was no evidence that “Molder’s truck had been used in the commission
of this or any other crimes.” 
Furthermore, the trial court determined that Molder “was not in the
proximity of his truck such that he could gain access to the passenger
compartment.”  Regarding its legal
determination of whether a valid inventory of Molder’s truck occurred, the
trial court specifically concluded that as a matter of law Molder’s truck
“never validly came into the possession or responsibility of the DPS and
therefore should not have been impounded.”

This conclusion
by the trial court regarding the impoundment and inventory of Molder’s truck is
supported by the court of criminal appeals’s decision
in Benavides.  600 S.W.2d at 810.  In Benavides,
the police discovered the defendant and his wife in their home; both had been
shot, and the defendant’s wife was dead.  Id.  The police discovered the type of car the
defendant drove and began looking for it. 
The car was found locked and legally
parked about two blocks away from where the defendant and his wife were found.  The police impounded the car for “protective
custody” and “safekeeping.”  Before
towing the car, the police inventoried its contents and discovered a suicide
note incriminating the defendant.  Id.
at 810–11.

The court of criminal appeals held the car was
unlawfully impounded because (1) there was no evidence that the car was
impeding the flow of traffic or a danger to public safety; (2) the vehicle was
legally parked in a residential area and locked; (3) while the appellant may
not have been able to retrieve the car, there may have been someone else who
could have done so for him, and (4) there was no reasonable connection between
the arrest and the vehicle.  Id. at 812.  In so holding, the court stated, “The mere arrest of a defendant cannot be construed to authorize the seizure of his automobile when the arrest took place two or more blocks away from the automobile.”  Id.[9]

This case
is similar to Benavides.  Molder was detained and arrested
approximately 100 feet from his truck.  His
truck was legally parked.  The trial
court specifically found that there was no evidence Molder’s truck was impeding
the flow of traffic.  The trial court,
which listened to the arresting officer’s testimony and reviewed the
photographs depicting where Molder was in relationship to his truck when he was
arrested, found that there was no reasonable connection between Molder’s arrest
and his truck.  I conclude that there is
no reasonable distinction that the distance in Benavides was two blocks and in this case approximately 100
feet.  The gravamen of Benavides, like in this case, is that
the defendant’s mere arrest does not automatically give the State the authority
to conduct an inventory.  Id. 
I would hold that the mere arrest of Molder did not authorize the
seizure of his truck and that, given the record evidence and the applicable
federal and state law, the trial court could have reasonably granted Molder’s
motion to suppress upon this additional ground. 
See Armendariz v. State, 123 S.W.3d 401, 403 (Tex. Crim. App. 2003) (We must “uphold the trial court’s
ruling on appellant's
motion to suppress
if that ruling
was supported by
the record and
was correct under
any theory of
law applicable to
the case.”), cert. denied, 541 U.S. 974 (2004). 
Because I would affirm the trial court’s judgment granting the motion to
suppress on this basis, I concur with the majority’s opinion.

 

 

 

BILL MEIER
JUSTICE

 

PUBLISH

 

DELIVERED:  February 24, 2011











[1]The
inventory form also shows that the truck contained valuable items unassociated
with drug use.  Officers found an air
tank, two chairs, two hammers, and a cooler in the truck’s bed.  They found “ammo” in a toolbox.  They also found a wallet inside the truck.





[2]See Tex. Health & Safety Code Ann. §§ 481.102(6),
.112(a), .115(a) (Vernon 2010).





[3]129 S. Ct. 1710, 1723 (2009).





[4]See Tex. Code Crim. Proc.
Ann. art. 44.01(a)(5) (Vernon Supp. 2010).





[5]In
the Supreme Court’s opinion, it noted that the Colorado trial court had found
that the “standard procedures for impounding vehicles mandated a ‘detailed inventory
involving the opening of containers and
the listing of [their] contents.’”  Bertine, 479 U.S.
at 370, 107 S. Ct. at 740 (emphasis added).





[6]However,
according to Trooper Gillum, appellee’s
father arrived after the inventory
occurred while the “wrecker was . . . hooking up to the truck.”





[7]The
trial court admitted DPS’s property inventory form, which contained the results
of the particular inventory in this case but did not contain any statement
about DPS’s policy.  The general legality
of an inventory is not contingent on whether the inventory policy is
written.  See United States v. Skillern, 947 F.2d 1268, 1275 (5th Cir. 1991), cert. denied, 503 U.S. 949 (1992); Richards, 150 S.W.3d at 771.





[8]Trooper
Hall also testified about some exceptions to requiring an inventory, but he did
not give details about DPS’s procedures when those exceptions do not apply and
an inventory therefore proceeds.





[9]The rule in Benavides that the mere arrest of a defendant cannot be construed
to authorize the search of his automobile has been expanded by some courts to
encompass those situations where there is a reasonable connection between the
crime of arrest and the vehicle.  Lagaite v. State, 995 S.W.2d 860, 865 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d).  The trial court in this case specifically
found there was no reasonable connection between the crime for which Molder was
arrested and his truck.