Oscar Romeo BENAVIDES, Appellant,

v.

The STATE of Texas, Appellee.

No. 60277.

Court of Criminal Appeals of Texas,
Panel No. 3.

May 14, 1980.
Rehearing Denied July 16, 1980.

R. Randall Wooley, II, Dallas, for appellant.

Henry M. Wade, Dist. Atty., John H. Hagler, John William Booth and Todd Meier, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before PHILLIPS, DAVIS and DALLY, JJ.

OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of murder. The punishment is imprisonment for seven years.

The question in this case is the same as it was in *Daniels v. State*, 600 S.W.2d 813 (No. 60,014, decided this day); it requires a determination of the rights guaranteed to all citizens by the Fourth Amendment to the Constitution of the United States. Was the inventory search of an automobile reasonable under Fourth Amendment standards? A purported suicide note found in the automobile searched was admitted in evidence. We held in *Daniels* that the automobile was lawfully impounded; consequently the inventory search was reasonable and the weapons seized were properly admitted in evidence. In this case the automobile, for reasons that will be hereinafter stated, was not lawfully impounded; consequently the search was not reasonable and the purported suicide note discovered was erroneously admitted into evidence.

On April 25, 1977, Dallas police officers were dispatched to a Dallas residence where they found the appellant and his wife on the garage floor. They both had been shot; appellant's wife was dead and the appellant had a stomach wound. A handgun and spent cartridges were found at the scene. Appellant was taken to a nearby hospital. The police, after asking appellant's half brother what kind of vehicle appellant drove, ascertained the location of appellant's automobile. The automobile was locked and legally parked about two blocks away from the premises where the appellant and his wife's body were found. The automobile was impounded and prior to its being towed it was searched and an inventory was made. The search was made without a warrant and there is no evidence of probable cause for the search. Certain items were discovered in the search but only the purported suicide note was admitted in evidence. The note was offered as part of the prosecution's case in chief and it was important to the State's theory of murder and attempted suicide. Admitting the note in evidence was not harmless error.

▪ The State's sole contention is that the note was properly obtained pursuant to an inventory search as approved in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Opperman*, the Supreme Court upheld the practice of police securing and inventorying an automobile's contents pursuant to a standard procedure when an automobile was impounded. The procedures, the Court stated, were developed to protect the owner's property while it was in police custody, to protect the police against claims or disputes over lost or stolen property, and to protect the police against potential danger. However, before any need arises to inventory the contents of an automobile there must be a lawful impoundment. The Supreme Court stated in *Opperman*:

> "The [police] were indisputably engaged in a caretaking search of a lawfully impounded automobile. The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in *Cady* [413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706], there is no suggestion whatever that this standard procedure . . . was a pretext concealing an investigatory police motive." [cites omitted.]

428 U.S. at 375, 376, 96 S.Ct. at 3100. Therefore, before an inventory search can be upheld as lawful there must be an inquiry into the lawfulness of the impoundment.

▪ The automobile has been subject to less stringent warrant requirements for searches and seizures than other "effects" protected under the Fourth Amendment. The reasons for this are twofold. First, the inherent mobility of an automobile creates circumstances of such exigency that as a matter of practical necessity strict enforcement of the warrant requested is impossible. Second, there is a lesser expectation of privacy with respect to an automobile. *South Dakota v. Opperman*, supra. Nonetheless automobiles are "effects" and with-

in the scope of the Fourth Amendment. *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971). Thus in order for an impoundment of an automobile to be lawful, the seizure of the automobile must be reasonable under the Fourth Amendment.

The Supreme Court in *Opperman* and in decisions since then has failed to earnestly discuss what is necessary for an impoundment of an automobile to be considered a reasonable seizure. Still the Court in *Opperman* did mention two bases for a lawful impoundment. The Court stated:

> "In the interest of public safety and as part of what the court has called 'community caretaking functions' automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highway or street at the behest of police engaged solely in caretaking and traffic control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and thereby jeopardize both the public safety and the efficient movement of vehicle traffic. The authority of police to seize and impound from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." [cites omitted.]

428 U.S. at 368, 369, 96 S.Ct. at 3097.

Besides removal from an accident scene or impoundment for parking violations as stated above, the police may lawfully impound vehicles in other circumstances. Thus where the owner or driver requests or consents to the impoundment, the seizure would be reasonable. *Schwasta v. United States,* 392 A.2d 1071 (D.C.1978); *Minnesota v. Waters,* 276 N.W.2d 34 (Minn.1979). The impoundment is lawful if the automobile is stolen or the police have a reasonable belief that it is stolen. *Griffin v. Indiana,* 372 N.E.2d 497 (Ind.1978); *United States v. Morrow,* 541 F.2d 1229 (7th Cir. 1976), cert. denied 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977). If the vehicle is abandoned, a hazard, or so mechanically defective that it creates a danger to others using public streets or highways it may be lawfully impounded. *Maine v. White,* 387 A.2d 230 (Me.1978); *Washington v. Singleton,* 9 Wash.App. 327, 511 P.2d 1396 (1973). An automobile may be impounded if the driver is arrested for being intoxicated while in the vehicle and no other person is available to drive the vehicle or otherwise safeguard the vehicle. *United States v. Piatt,* 576 F.2d 659 (5th Cir. 1978). Police may impound a vehicle if they are authorized to do so under a statute. See Section 103.03 of the Alcoholic Beverage Code. Also, an automobile may be impounded if the driver is removed from his automobile and placed under custodial arrest and no other alternatives are available other than impoundment to insure the protection of the vehicle. *Evers v. State,* 576 S.W.2d 46 (Tex.Cr.App. 1978); *Christian v. State,* 592 S.W.2d 359 (Tex.Cr.App.1980). *Daniels v. State,* supra.

While the cases cited above do not include every basis that an impoundment has been upheld, they are indicative of the grounds that most jurisdictions would agree upon to allow impoundments. We now turn to the merits of the case.

■ The police officer who authorized the impoundment stated that it was impounded for "protective custody" and that he was reasonably sure that it belonged to the appellant. He stated further that it was standard operating procedure to take the vehicle of an accused into custody when the accused had been arrested. Also he stated that there were no valuables in plain view but a key ring with keys on it was visible under the dashboard. While there is some confusion as to whether the appellant had been formally charged when the impoundment took place we conclude that that is not controlling in these facts and circumstances. What is controlling is that the only reason given for the impounding of the vehicle was its "safekeeping."

We conclude that neither *Opperman* nor any Supreme Court decision authorizes this kind of seizure. The mere arrest of a defendant cannot be construed to authorize the seizure of his automobile when the arrest took place two or more blocks away from the automobile. See *In the Matter of One Chev.—2 Door, Etc.*, 121 Ariz. 532, 591 P.2d 1309 (1979); *Drinkard v. Tenn.*, 584 S.W.2d 650 (Tenn.1979). There was no evidence that the car was impeding the flow of traffic or that it was a danger to public safety. The vehicle was legally parked in a residential area and it was locked.

The State contends that a local ordinance prohibits a vehicle from being parked in one position on a street for over twenty-four hours. Further they argue that since the appellant was seriously wounded and under arrest he would be unable to take any action in moving his car the police were justified in impounding the vehicle for its own protection. This argument is without merit. First of all no violation of the ordinance had yet occurred. We cannot agree that a pre-violation seizure of an automobile is permissible. Furthermore there was no testimony that it was standard procedure to impound a vehicle for this violation or whether the issuance of a citation was the usual procedure. Also while the appellant himself may not have been able to attend to the vehicle he may have been able to instruct someone to do it for him. Finally, there was no basis stated why the police were reasonably concerned with the protection of the appellant's property. See *Kansas v. Urban*, 3 Kan.App.2d 367, 595 P.2d 352 (1979); *New Jersey v. Slockbower*, 79 N.J. 1, 397 A.2d 1050 (1979).

While it may have been standard police procedure to impound the vehicle of a person who is arrested we conclude that the Fourth Amendment protection against seizures cannot be whittled away by a police regulation. For such a procedure there must be some reasonable connection between the arrest and the vehicle. See *Nolan v. Tenn.*, 588 S.W.2d 777 (Tenn.Cr.App. 1979); *Dunkum v. Georgia*, 138 Ga.App. 321, 226 S.E.2d 133 (1976). In the case at bar none existed. Nor was there any other reasonable ground given for the impoundment. We, therefore, hold that the impoundment of appellant's automobile and the subsequent search were unlawful. See also *Minnesota v. Goodrich*, 256 N.W.2d 506 (Minn.1977); *Wagner v. Commonwealth*, 581 S.W.2d 352 (Ky.1979); *Washington v. Singleton*, supra.

The State also contends that even if the impoundment and search were unlawful, the error in admitting the note was cured and rendered harmless because the appellant himself testified about the note. The appellant admitted to writing the note and placing it in his car. He explained that the note merely expressed his plans for an upcoming trip. Formerly there was a long line of cases which would have supported the State's position that this testimony would have fallen under the doctrine of curative admissibility and appellant's objection to the unlawful search and seizure would have been deemed waived. E. g., *McLaughlin v. State*, 109 Tex.Cr.R. 307, 4 S.W.2d 54 (1928); *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr.App.1972); *Creel v. State*, 493 S.W.2d 814 (Tex.Cr.App.1973). However, in *Thomas v. State*, 572 S.W.2d 507 (Tex.Cr.App.1978), in which the writer of this opinion filed a dissenting opinion, the majority held that "the harmful effect of improperly admitted evidence which is obtained by illegal police practices is not cured when a defendant gives testimony on direct examination which establishes the same or similar facts unless the State can show that its illegal action in obtaining and introducing the evidence did not impel the defendant's testimony." The State in the case at bar did not make such a showing. Therefore appellant did not waive his objection under the majority opinion in *Thomas v. State*, supra.

The judgment is reversed and the cause remanded.