**Vincent Troy BASS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–91–157 CR.**

Court of Appeals of Texas, Beaumont.

Aug. 12, 1992.

Tom Brown, Livingston, for appellant.

Robert Hill Trapp, Dist. Atty., Coldspring, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

For brevity, Bass will be referred to as the "Appellant", and the prosecuting authority will be referred to as "State". Prior to trial, Appellant filed a motion to suppress evidence obtained from his automobile on or about September 27, 1990.

On the same date, September 27, 1990, the motion sets out certain officers of the San Jacinto County Sheriff's Department and the Texas Department of Public Safety "searched" the motor vehicle of Appellant. In general terms the motion avers that the "search" was made without a valid search warrant, without consent, without probable cause, and without exigent circumstances.

Major reliance is placed by the Appellant in TEX.CODE CRIM.PROC.ANN. art. 38.23. Article 38.23 provides in general that evidence which is obtained in violation of the provisions of the Constitution, or laws of Texas, or the Constitution or laws of the United States of America shall not be admitted into evidence against the accused. Article 38.23 contains an exception generally known as the "good faith" exception.

The occurrences and the events which were the background of the motion to suppress were not usual. They were most unusual. The parties stipulated at the hearing that a burglary and or robbery had occurred two days prior to the particular inventory or search and that in that criminal episode some jewelry had been taken. There was a further stipulation that the jewelry taken from the burglary or robbery was found in the vehicle of the Appellant. The automobile was located in San Jacinto County.

An investigation had been ongoing because of a robbery that had taken place on September 25, 1990, at the habitation or residence of one Buna Henderson in the town of Shepherd. Mrs. Buna Henderson on the date of September 27, 1990, had viewed a photographic line up. She was able to identify an individual out of the line up. The individual was Vincent Bass. Mr. Bass was identified in the court room as being the defendant. The home of Mrs. Henderson had been entered in the afternoon around 6:00 p.m. Mrs. Henderson had definitely identified Mr. Bass as being the actor who had entered her home. This information was definitely conveyed to Sheriff Lacey Rogers. Immediately after the identification of Bass, Sheriff Rogers and Sergeant Taylor began attempting to locate Bass. Mrs. Henderson had communicated to the officers that she had observed a brown vehicle parked across the road from her home. She had observed this vehicle while she herself was out mowing. Another witness, a neighbor, described a dark brown vehicle. The officers were aware that Bass had a warrant outstanding against him for a revocation of parole. The outstanding warrant was in full effect. Immediately after obtaining this information about Bass, or shortly thereafter, the officers spotted a vehicle and the Appellant, Bass. The law officers were still in their same vehicle that they had been in when interviewing Buna Henderson. They noticed, spotted, and recognized Bass and his vehicle coming down Hill Street towards State Highway 150. Sergeant Taylor was still in the company of the Sheriff of San Jacinto County. The officers attempted to start following Bass. The peace officers attempted to stop Bass. The Sheriff initiated lights and sirens.

Very shortly after this action Bass changed course and started heading towards the Sheriff's patrol car. The patrol car had to get out of the way to keep from being hit. A second time the Appellant headed his vehicle towards the vehicle of the Sheriff attempting to ram it. Again the Sheriff and the Sergeant had to take evasive action to get out of the way to avoid a collision. These ramming attempts were made by Bass when the lights on the Sheriff's vehicle were activated. Two attempted serious collisions were avoided.

The Sheriff distinguished that the driver was Vincent Bass and the color of the vehicle was brown. The vehicle was a Thunderbird, a 1977 model. The brown color was definitely a dark brown. During the pursuit of the Appellant, the Sheriff noticed that Bass made certain movements. These movements were significant in that Bass leaned over and appeared to be reaching for something under his driver's seat. The Sheriff saw these movements but he could not tell exactly what Bass was doing or trying to accomplish. The movements were made more than once.

Eventually, the dark brown Thunderbird came to a stop at what was known as the location or area of the Scott residence. The Scott residence was occupied by Mrs. Scott and a Walter Scott. The Scotts were relatives of Bass. Bass did not exit his vehicle immediately. The Sergeant asked him to get out of his vehicle. Bass exited his vehicle and a hostile confrontation took place. After exiting the vehicle, Bass did not cooperate with any directions. The record reflects that Bass started towards

the Sergeant and was "cussing" the Sergeant as well as threatening Sergeant Taylor. Sergeant Taylor was at the rear of the vehicle as the Appellant was exiting. Only a few feet separated them. Bass was arrested at this point and a valid warrant of arrest existed. Also the immediately preceding dramatic acts of Bass constituted a reasonable probable cause.

The officers finally cuffed the Appellant. After cuffing Bass, he proceeded to wrestle and tried to get away from the officers. Appellant started screaming for his grandmother or his mother and other support. The officers did not know how many individual persons were at the scene at the Scott residence and the surrounding community. The Appellant, according to the record, attempted to escape the control of the officers. One witness testified that Bass attempted to make a movement back towards his vehicle and tried to get away. Appellant also apparently tried to make certain movements toward the residence.

The officers had prior dealings with Bass. In some of these prior events Bass had had a weapon about him. On the day in question, Bass was out on bond for a weapons charge. The officers had information that the robbery that had occurred at the Henderson residence involved the use of a weapon by Bass himself. This knowledge and past experiences definitely caused concern to the officers in regards to the Appellant on the day that he stopped his vehicle at the Scott residence. The officers experienced apprehension and reasonable fear that Bass might have a gun or weapon in his Thunderbird.

It became necessary for the Sheriff to call for some back up assistance. The Sheriff explained that he did not know how many persons were at the location. The Sheriff wanted to avoid a serious confrontation while the Appellant was taken into custody.

At one point, Sergeant Taylor was trying to hold Bass, but Bass started down the road. Attempts were made to place Bass in the patrol vehicle. Even after the door of the patrol vehicle was approached the Appellant was still fighting and he lunged.

Appellant then fell. In the fall he struck his head on the edge of the door. A gash to his head resulted. The Appellant was taken to a hospital for medical attention. During these events and occurrences it was not feasible, according to the record, for the peace officers to safeguard and watch the vehicle of the Appellant.

■ Bass had relatives in the area of the Scott residence. Other officers arrived. One was a Mr. Van Loggins. He and Taylor searched or inventoried the Thunderbird. Henderson's jewelry was found. The dark brown Thunderbird was impounded in accordance with a standard procedure with the Sheriff's Department of San Jacinto County. The record reflects that the inventory or search was conducted to protect the officers and to protect the property in the vehicle. The Sheriff testified that he was concerned that there was a possibility that after the suspect was taken into custody that, nevertheless, the suspect might get loose and possibly go for a weapon in his car. The Sheriff was concerned that the relatives of the suspect could have gone for weapons or destroyed evidence. Circumstantial evidence tended to show that the law officers had no time to locate a magistrate or a jurist to obtain a second warrant of arrest or a search warrant. The record does not reflect that the officers acted in bad faith.

■ The trial court's ruling does not reflect an abuse of discretion. *Maddox v. State*, 682 S.W.2d 563 (Tex.Crim.App.1985). The district bench was the fact finder in the motion. The judge may elect to believe or to disbelieve any or all of the testimony of a witness. *Taylor v. State*, 604 S.W.2d 175 (Tex.Crim.App.1980). An intermediate appellate court in reviewing the record is to do so in a light that is most favorable to the decision and ruling of the trial bench. *See Clark v. State*, 548 S.W.2d 888 (Tex. Crim.App.1977).

■ Bass takes the position that the impoundment of the Appellant's vehicle was illegal. Thus, the inventory was unlawful and the jewelry discovered should have been suppressed. Reasonable inferences

can be drawn from the evidence. The trial judge at the suppression hearing had the right to consider these reasonable inferences. The United States and Texas Constitution do not require that every search be made pursuant to a warrant for that search. These basic organic laws prohibit unreasonable searches and seizures. The test is reasonableness under all the circumstances of the seizure and impoundment when viewed with the surrounding circumstances. Each case must be decided on its own facts. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Decisional authority decrees that in applying the reasonableness test in dealing with automobiles either impounded or searched, acts of peace officers have been sustained where the said acts were performed in an effort to secure or protect the vehicle or its contents or to look for weapons or evidence. Under the totality of the facts and circumstances in this record, the peace officers were apprehensive of violence because of the Appellant's movements and actions in his vehicle before the vehicle came to a stop at the Scott residence.

The trial judge, of course, could draw the proper legal conclusions. That was his function. It was the trial bench's prerogative and duty to apply the proper legal propositions to the facts. The facts, of course, were to be weighed and analyzed by the district court fact finder on the motion to suppress.

It should be stressed that the sole point of error advanced by the Appellant was that the trial court erred in denying the Appellant's motion to suppress the fruits of an inventory search of his automobile and admitting the same into evidence because the search was illegal.

Important and significant is that part of the record that clearly establishes that Bass was known to be a carrier of weapons. The Sheriff knew this from past occurrences. Bass was out on bond on a weapons charge at the time of the confrontation. Also during the confrontation Bass persisted in screaming for or hollering for his mother. It was not known to the peace officers how many individuals were at the Scott residence at the time in question. Nor was it known how many of these individuals were relatives of Bass. Not only was Bass out on bond on a weapons charge at the time of the confrontation but in the robbery at the Henderson dwelling weapons were taken. Under the circumstances facing the Sheriff and other officers, inventories are properly permitted to safeguard the property contained in the vehicle and secondly, to protect the peace officers from false accusations or fraudulent claims that the officers lost the property or through negligence permitted the property to be wasted or taken away or that the officers stole the property. *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

The impoundment of an automobile may be lawful under various circumstances. A vehicle that has been used in the commission of an offense may be impounded. An automobile that becomes unattended because the driver is removed from the vehicle and placed under arrest; and, hence, the property within the vehicle cannot be adequately protected may be impounded. *Benavides v. State,* 600 S.W.2d 809 (Tex.Crim.App.1980). The impoundment of Bass' vehicle was reasonable. The relatives of Bass gave no assurances that they would protect the vehicle and its contents. Under these unusual surrounding exigencies a search and impoundment and an inventory of Bass' vehicle was reasonable and lawful in the interest of public safety or community safety. Under what has been termed community care taking functions, automobiles may frequently be taken into police custody and impounded. *Opperman, supra.*

Also, a vehicle may be lawfully impounded if the driver is removed from his vehicle and placed under arrest and impoundment is the only pragmatic means to insure the protection of the vehicle and its contents. *Benavides, supra. See and compare Fenton v. State,* 785 S.W.2d 443

(Tex.App.1990, no pet.). This impoundment and inventory were reasonable.

The action taken in regard to Bass' car can be legitimately looked upon as a reasonable search. Testimony exists that the Appellant, Bass, could have escaped the Sheriff's car in an effort to get to a weapon in view of the Appellant's movements and actions of reaching under his own driver's seat before he was finally stopped. Moreover, the apprehension of the officers was realistic because some of the relatives could have gone for some type of a weapon in the vehicle or destroyed evidence that was within the vehicle. The County Sheriff testified that it was necessary for him to take the precautions that were taken in order to secure the vehicle and to secure the scene including safeguarding the safety of the community. It is not challenged that there existed a standard procedure to impound and inventory a vehicle. Under the exigencies here, the contention that Bass' vehicle had arrived at the residence of the Scotts did not make unreasonable the search, the impoundment or the inventory. Considering the past experiences with Bass and considering that Bass was a prime suspect in the aggravated robbery and was actually driving a dark brown Thunderbird and the method that he drove the same (attempting to ram the Sheriff's car)—these events, past and present, when taken together constituted probable cause to believe that the vehicle had been involved in the commission of a crime. The search of the passenger compartment and the search under the seat of the driver were based on probable cause within the knowledge of and within the actual sight of the Sheriff and the Sergeant.

When a law enforcement official has made a lawful custodial arrest of the driver of an automobile, then he may as a contemporaneous incident to that custodial arrest make a search of the passenger compartment of that automobile. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Clearly, here, the Sheriff made a lawful custodial arrest of Bass on the parole violation warrant because, inter alia, Bass had attempted to flee and had created a high speed, dangerous chase. The Sheriff recognized Bass.

The jewelry was properly discovered and was admissible under either the concept of lawful impoundment and proper inventory taken in accordance with a standard practice of the Sheriff's office or on the theory of a search incident to a lawful arrest.

The Appellant, in his brief, relies on the record or the statement of facts made at the pretrial hearing. This hearing was held upon Bass' motion to suppress Henderson's jewelry that was found located under Bass' driver's seat in Bass' vehicle. Bass' brief concedes that a valid warrant for revocation of parole was outstanding. Bass likewise concedes that a confrontation took place between Bass and the officers and that Bass began cussing. The cussing escalated into a wrestling match. Significantly, Bass states in his brief that Trooper Van Loggins and Sergeant Deputy Taylor discovered a white sock under the driver's seat of Bass' car. The white sock contained a plastic bag of jewelry. Bass states in his brief: "The jewelry was taken in the robbery of Mrs. Henderson." The trial judge had the right and duty to consider all the surrounding circumstances and exigencies of the scene. Bass affirmatively states in his brief that the evidence and testimony, that he set out in his brief and relied upon, transpired at a pretrial hearing on his motion to suppress.

There were both friends and relatives of Bass in the area where the Thunderbird was stopped. In fact, at least two of his relatives came to the scene. It should be stressed that at least two witnesses testified plainly that they saw the suspect, Bass, reaching underneath his own front driver's seat and these witnesses were apprehensive and felt that there could be a weapon underneath the front seat, considering their past experiences with Bass and considering other relevant events such as this indicted robbery itself and the fact that Bass had a weapon charge pending separately from the robbery of Buna Henderson.

Bass' counsel did object on the trial of the merits for the purposes of the record stating in substance that the defendant would object to any testimony, any question, or any answers relating to the search of the vehicle for the reason stated in the pretrial hearing, having been conducted approximately a month before the trial on the merits. Plain and clear it is, that both objections on the motion to suppress and the objection at trial were based upon the evidence adduced and the record made on the motion to suppress. Of significance and, perhaps, paramount decisional authority is *New York v. Belton, supra.* The United States Supreme Court held that when a policeman or a law enforcement official has made a lawful custodial arrest of the occupant of an automobile, that officer may, as a contemporaneous instance to that arrest, search the passenger compartment of that same automobile and significantly, the Supreme Court concluded that the officer or officers may also examine the contents of any containers found within the passenger compartment. The Supreme Court reasoned that if the passenger compartment is within the reach of the arrestee (here Bass) so also will the containers be within the reach of the arrestee, Bass. The driver's seat and the area thereunder was within his reach and Bass had made movements compatible with reaching under his own driver's seat.

Furthermore, a container may then be searched whether that container is in an open and obvious location or not and whether the container itself is either open or closed. The justification for this rule is that a lawful custodial arrest justifies a search of the passenger compartment that was within the reach of the arrestee. This rule is established because of the danger that the contents of containers in the passenger compartment might pose to the police. *New York v. Belton, supra.* A custodial arrest of an arrestee grounded upon probable cause is a reasonable intrusion and a reasonable search under the Fourth Amendment. A search then, incident to such an arrest, requires no additional justification. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The size of the container is not the determining factor. In *Robinson,* the container was a cigarette package that had been crumpled up.

The totality of the circumstances, the surrounding events and occurrences and the exigencies of the scene justified the impounding of Bass' Thunderbird which had been used in a manner to attempt to ram the Sheriff's patrol car.

The judgment and sentence below are affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. I offer a more simplistic, chronologic version of the facts beginning when the sheriff and a deputy spotted appellant driving a brown automobile. They activated their lights and siren and pursued appellant until he pulled behind a mobile home belonging to his grandmother. Both officers drew their weapons and appellant exited his vehicle. A verbal confrontation occurred which escalated into a wrestling match. Appellant was handcuffed and then placed into the back seat of the sheriff's vehicle. Other officers began looking into appellant's vehicle and found jewelry, later associated with the robbery.

Unlike the majority, the sheriff and his deputy justified the intrusion as an inventory. The sheriff testified it was his department's standard procedure to impound a vehicle whenever they arrested someone and to inventory those vehicles which have been impounded. The question for this court is quite straightforward: whether the impoundment was lawful. Before an inventory search is permitted, there must be a lawful impoundment. *Benavides v. State,* 600 S.W.2d 809 (Tex.Crim.App.1980). The state argues the impoundment was lawful since a necessity existed to protect appellant's vehicle from "others" at appellant's residence, citing *Fenton v. State,* 785 S.W.2d 443 (Tex.App.—Austin, 1990, no pet.) and *Backer v. State,* 656 S.W.2d 463 (Tex.Crim.App.1983). This argument is neither plausible nor supported by the

cases. In *Fenton*, the court held an impoundment unlawful when the defendant's car was legally parked in the parking lot of Fayette County Justice Center and he was only going to be temporarily detained while posting bond on traffic offenses. In *Backer*, an impoundment was held lawful because the defendant's car was going to have to be left parked on a public street. Neither of those instances apply here. Appellant's vehicle was legally parked on private property where he was domiciled.

The State goes on to argue (an argument accepted by the majority) that appellant was known to carry weapons and that the search of the car was appropriate under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which allows the police to search the passenger compartment of a car as a contemporaneous incident to an arrest. The State (and majority) glosses over the fact that when the vehicle was searched, appellant was handcuffed in the rear of the sheriff's vehicle, the sheriff's vehicle was parked on the street in front of the mobile home while appellant's vehicle was behind his grandmother's home and there were four or five peace officers in the vicinity of appellant's vehicle. Under these circumstances, *Belton* is not controlling.

Further, the State argues that because appellant was a suspect in the robbery and a brown vehicle had been identified near the scene of the crime, that impoundment of appellant's brown vehicle was lawful because probable cause existed to believe the vehicle had been involved in the commission of a crime. In *Gauldin v. State*, 683 S.W.2d 411 (Tex.Crim.App.1984), the court held the police had authority to impound a vehicle because the defendant was in custody, the vehicle was parked on a bar parking lot and it matched the description of the vehicle used in the robbery. The facts of this case do not fall within *Gauldin*.

The majority somehow views this as a search based upon probable cause. How-

ever, the sheriff and his deputies admitted they had no probable cause to search the vehicle and did not conduct a search for evidence of the robbery, but conducted an inventory subsequent to an impoundment. In fact, the deputy testified it never occurred to him that there might have been items from the robbery in the vehicle.

The sheriff was candid when he admitted he had a blanket policy; to impound the vehicles of all persons arrested.[1] In *Benavides*, 600 S.W.2d at 812, the court stated: "While it may have been standard procedure to impound the vehicle of a person who is arrested we conclude that the Fourth Amendment protection against seizures cannot be whittled away by a police regulation." I could not have said it better. The evidence should have been suppressed. Since I cannot conclude that the error was harmless beyond a reasonable doubt, Tex.R.App.P. 81(b)(2), I would sustain the point of error. I would reverse the judgment below and remand the cause for a new trial.

---

1. It is to their credit that the sheriff and his deputy did not attempt to justify the inventory or search by some after-the-fact legal theory.

Their candor and truthfulness, while expected and required, is exemplary.