Opinion issued May 17, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00478-CR

———————————

Joseph Thomas Roberts, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 10th Judicial District Court 

Galveston County, Texas



Trial Court Case No. 10CR1417

 



 

MEMORANDUM OPINION

          Appellant,
Joseph Thomas Roberts, pleaded guilty to the offense of felony theft,[1] and the trial court
assessed his punishment at confinement for nine years.  In his sole issue, appellant contends that
the trial court erred in denying his motion to suppress evidence.

          We
affirm.

Background

          At a
pre-trial hearing on appellant’s motion to suppress evidence, Friendswood
Police Department (“FPD”) Officer J. Ives testified that on May 10, 2010, he
was patrolling a neighborhood when he noticed a car parked on the street.  He considered the car suspicious because
“most of the houses in that location all have driveways” and, at that time of
day, “[p]eople are usually at work.”  The
car was parked “close to a stop sign” and the “passenger side tires were
actually up on a curb.”  Ives noted that
because there had been reports of recent burglaries in that neighborhood, he
investigated the car to see if it was “broken down.”  He knocked on the doors of neighboring houses
in an attempt to find the owner of the car, but nobody responded.  Ives continued his patrol of the neighborhood
and noticed a man, later identified as appellant, speaking on his cellular
telephone about one-half mile from the car. 
Ives returned to the car and parked nearby.  Some time later, Ives saw appellant “begin
walking towards” the car, but when appellant noticed Ives, he turned and walked
down the street.  Appellant then, while
still speaking on his cellular telephone, knocked on the door of a house in the
neighborhood but received no answer.  

Officer Ives then approached
appellant to ask him “what he was doing in that location.”  Appellant responded that he was “supposed to
meet with a contractor to do some work on a house,” but he could not provide
the house’s address.  Ives asked
appellant for his identification, and appellant replied that his identification
was in his car, which appellant identified as the same “suspicious” car that
Ives had noticed earlier.  Upon receiving
appellant’s identification, Ives checked it against a law enforcement database
and determined that appellant had two warrants for his arrest on outstanding
traffic citations in League City.  Ives
also noted at this time that the car had a license plate only on the front and
“dealer tags” on the back.  After
receiving confirmation of appellant’s two warrants, Ives arrested appellant and
placed him in the back seat of his patrol car. 


Appellant then asked Ives if appellant’s
wife could pick up the car.  Originally, Officer
Ives planned to allow appellant’s wife to pick up the car, but when he discovered
that she would be travelling from Texas City, Ives opted to have the car towed
because he determined that it would take appellant’s wife “longer than 20
minutes” to arrive, and it was FPD policy “to only allow 20 minutes to allow
for someone to come pick up the vehicle.” 
He then explained that FPD policy is to “inventory the vehicle” upon
towing by making a log of “everything that’s in the vehicle.”  Ives stated that the purpose of the policy is
“[t]o make sure that everything that was in the vehicle is going to be listed .
. . so that the subject knows what was actually in the vehicle when it was
being towed.”

However, before the tow truck
arrived, Officer Ives was contacted via radio by FPD Detective A. Rose, who
explained that he wished to speak with appellant as part of an
investigation.  Rose also asked Ives to
attempt to procure consent from appellant to search the car.  Appellant, then sitting in the back of the
patrol car, gave his consent to search the car. 
Ives relayed to police dispatch that appellant had given consent, and,
at some point afterwards, Ives gave the keys to Rose before transporting
appellant to the police department.  Ives
later learned that “some items were actually recovered from the vehicle” that
“were actually from a burglary in a house in League City earlier that day.”  On cross-examination, Ives testified that he
took appellant’s keys because “[o]nce [appellant] was placed in custody, [Ives]
wasn’t going to leave the vehicle there.”

Detective Rose testified that he
was “working a previous case involving” appellant when he heard Ives’s dispatch
report that he had just arrested appellant for outstanding warrants.  Rose requested that Ives detain appellant and
wait for Rose to arrive so that he could question appellant.  He also asked Ives to obtain appellant’s
consent to search his car, and Ives informed him that appellant had given
consent.  

When Detective Rose arrived at the
scene, Officer Ives handed him the keys to appellant’s car.  Regarding FPD’s impoundment policy, Rose
explained that it is within a police officer’s discretion whether to “give the
vehicle to someone else” upon arrest. 
When a car is impounded, a police officer would “go through the vehicle and
. . . write down everything that [the police officer locates] inside the
vehicle.”  As a result, Rose believed he
had a right to search appellant’s car both because he “had consent to search”
and to “inventory prior to the vehicle being towed.”  Although Rose could not recall “who went into
the car first,” when he searched appellant’s car, he discovered a “coin purse,”
a “little pink bag” containing “numerous amounts of jewelry,” and a “video
camera case that contained a video camera.” 


On cross-examination, Detective Rose
elaborated that he wanted to question appellant regarding the burglary of a
motor vehicle in December 2008.  Rose
wanted to search the car to “look for contraband,” but he did not question
appellant at the scene because he would “rather talk to him at the station than
out on the street.”  However, on
re-direct examination, Rose further explained that he would be “no less
thorough” for an inventory search as compared to a search “on just a pure
consent.”  

The trial court denied the motion
to suppress, stating:

[E]ven if I were to disbelieve the police officers
and say this is all a pretext just to get in the car and there wasn’t any
waiver of rights, they nonetheless well established that after an arrest a
vehicle can be inventory searched.  Not
just in Friendswood, but any police agency has the right to do an inventory
search.  The contraband, the pictures
that we have in evidence show that this wasn’t hidden stuff under seats or in
the doorway, hidden in the doors, or anything else.  It was in the car.  One, the camcorder in the baby seat and the
jewelry and stuff right in the car, which would have normally . . . been found
in the course of an inventory search.

 

At any rate, the Court finds that the officers were
– not even getting into whether it was a valid waiver or not, the officers
under the auspices of an inventory search had the right to be in the car and to
find what they found, and the motion to suppress is denied.

 

Following
the trial court’s ruling, appellant pleaded guilty to the offense and requested
that the trial court make findings of fact and conclusions of law.  Among its findings of fact, the trial court
found that the car was “parked very close to a stop sign with wheels on one
side of the car up on the curb,” the car “had both a dealer tag and a regular
license plate,” and Officer Ives decided to tow the car “after ascertaining
that [appellant’s] wife lived in Texas City, Texas (about 20–30 minutes away).”  In its conclusions of law, the trial court held
that “[t]he stolen property found in [appellant’s car] was the result of a
valid and permissible inventory search.”

Standard of Review

We review a ruling on
a motion to suppress
evidence for an abuse of discretion.  Shepherd
v. State,
273 S.W.3d 681, 684 (Tex. Crim. App. 2008).  We generally consider only the evidence
adduced at the suppression hearing unless the parties consensually re-litigate
the issue at trial, in which case we also consider relevant trial testimony.  Rachal v. State, 917 S.W.2d
799, 809 (Tex. Crim. App. 1996).  We give
almost total deference to a trial court’s determination of historical facts,
especially if those determinations turn on witness credibility or demeanor, and
review de novo the trial court’s application of the law to facts not based on
an evaluation of credibility and demeanor.  Neal
v. State,
256 S.W.3d 264, 281 (Tex. Crim. App. 2008).  At a suppression hearing, a trial court is the
sole and exclusive trier of fact and judge of the witnesses’ credibility.  Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).
 Accordingly, a trial court may choose to
believe or to disbelieve all or any part of a witnesses’ testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).
 When the trial court makes findings of
fact with its ruling on a motion to suppress, an appellate court does not engage
in its own factual review but determines only whether the record supports the
trial court’s factual findings.  Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990).  Unless a trial court abuses its
discretion in making a finding not supported by the record, we will defer to
the trial court’s fact findings and not disturb the findings on appeal.  Cantu v. State, 817 S.W.2d
74, 77 (Tex. Crim. App. 1991).

 

 

 

Motion to Suppress

  In his sole issue, appellant argues that the trial
court erred in denying his motion to suppress evidence because “the search of
appellant’s vehicle was unlawful” under the United States Constitution[2]
and the Texas Constitution.[3]  

A peace officer’s inventory of the contents of an automobile
is permissible under both the Texas Constitution and the
United States Constitution if conducted pursuant to a lawful
impoundment.  South Dakota v.
Opperman,
428 U.S. 364, 375–76, 96 S. Ct. 3092, 3100 (1976); Benavides v. State, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980);
Lagaite v. State, 995 S.W.2d 860, 865 (Tex. App.—Houston [1st Dist.] 1999,
pet. ref’d).  Inventories serve to
protect (1) the owner’s property while it is in custody, (2) the police against
claims or disputes over lost or stolen property, and (3) the police from
potential danger.  Opperman, 428 U.S. at
369, 96 S. Ct. at 3097.  Inventories must
be conducted in good faith pursuant to reasonable standardized police
procedures.  Colorado v. Bertine, 479 U.S.
367, 374, 107 S. Ct. 738, 742 (1987).

Reasonable cause for impoundment of an automobile may exist
when the driver is removed from his automobile, placed under custodial arrest,
and his property cannot be protected by any means other than impoundment.  Lagaite, 995 S.W.2d at 865.  We note that peace officers need not
independently investigate possible alternatives to impoundment absent some
objectively demonstrable evidence that alternatives did, in fact, exist.  Mayberry v. State, 830 S.W.2d 176, 180 (Tex. App.—Dallas
1992, pet. ref’d).  Texas courts have
considered several factors in determining the reasonableness of an impoundment
of an automobile following a custodial arrest, including whether: (1) someone
was available at the scene of the arrest to whom police could have given
possession of the automobile; (2) the automobile was impeding the flow of
traffic or was a danger to public safety; (3) the automobile was locked; (4) the
detention of the arrestee would likely be of such duration as to require police
to take protective measures; (5) there was some reasonable connection between
the arrest and the automobile; and (6) the automobile was used in the
commission of another crime.  Josey
v. State,
981 S.W.2d 831, 843 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).

Appellant first argues that the impoundment of his car was
not lawful because it “was premised solely upon [his] arrest for warrants,”
relying on Benavides, 600 S.W.2d 809.  In Benavides,
police officers were dispatched to a residence where they found the defendant
and his wife suffering from firearm wounds. 
Id. at 810.  After the defendant was transported to a
hospital, the police officers questioned the defendant’s half-brother about the
location of the defendant’s car and discovered that it was “locked and legally
parked about two blocks away from the premises.”  Id.  They then impounded the car, conducted an
inventory search, and found the defendant’s suicide note, which was admitted
into evidence.  Id.  The court concluded that
the impoundment and subsequent inventory search were unlawful, noting that
there was “no evidence that the car was impeding the flow of traffic or that it
was a danger to public safety” because it was “legally parked in a residential
area and it was locked.”  Id. at 812.  

Appellant asserts that this case is controlled by Benavides because appellant “was away
from his vehicle and on a different street at the time of the arrest.”  However, the fact that appellant was not
driving the car at the time of his arrest is not controlling.  See,
e.g., Delgado v. State, 718
S.W.2d 718, 721 (Tex. Crim. App. 1986) (holding that impoundment and subsequent
inventory search of defendant’s car lawful where defendant was arrested for
selling narcotics in apartment complex parking lot and his car was parked in
lot); Starlling v. State, 743 S.W.2d
767, 772 (Tex. App.—Fort Worth 1988, pet. ref’d) (holding that impoundment and
inventory search were lawful where car was parked in a restaurant parking lot, defendant
was standing next to car, defendant was arrested on suspicion of burglary, and
“impoundment was necessary to secure protection of the vehicle”); see also Gongora v. State, No.
01-93-00974-CR, 1995 WL 569679, at *5–6 (Tex. App.—Houston [1st Dist.] Sept.
28, 1995, no pet.) (not designated for publication) (holding that impoundment
was lawful where defendant was arrested, outside of his car, in apartment
complex parking lot for selling narcotics). 
Here, Officer Ives noted that the car’s owner was registered in
Galveston, and he found the car parked in a residential neighborhood in
Friendswood.  He then saw appellant walk
to the car and “look inside” before approaching and knocking on the door of a
nearby residence.  Officer Ives spoke
with appellant and, after checking his identification, proceeded to arrest
appellant on warrants for outstanding traffic violations.  During their conversation, appellant admitted
that the car was his and contained his identification.  Under these circumstances, Ives could have reasonably
connected appellant with the car and concluded that appellant was the driver of
the car and had recently driven the car to Friendswood.  In contrast, the defendant in Benavides was arrested in a residence,
and police officers independently investigated the whereabouts of his car after
the arrest by questioning his half-brother. 
Benavides, 600 S.W.2d at 810.  The police officers then discovered the car
legally parked more than two blocks away from the residence.  Id.  There was no indication that the defendant in
Benavides was the “driver” of the car
or had any recent connection to driving the car.  Id.
at 810–11 (noting car may be impounded if driver is removed from car and placed
under custodial arrest).

We now turn to the factors indicating whether the
impoundment of appellant’s car following appellant’s arrest was reasonable.  First, there were no other parties at the
scene available to take possession of the car. 
Although appellant asserts that his wife could have retrieved the car in
“less than forty five minutes,” police officers are not required to
independently investigate alternatives to impoundment.  Mayberry,
830 S.W.2d at 180; see also St. Clair v. State,
338 S.W.3d 722, 724 (Tex. App.—Amarillo 2011, no pet.) (noting that although
defendant mentioned her boyfriend could retrieve her car, there was no evidence
that he was available, he would agree to retrieve car, or he had driver’s
license); Yaws v. State, 38 S.W.3d
720, 724–25 (Tex. App.—Texarkana 2001, pet. ref’d) (stating that, even though
appellant claimed his wife was fifteen minutes away and could take possession
of car, police officers were not required to wait for his wife because such
requirement “could result in the police remaining at the scene longer than
reasonably necessary”).  Furthermore, Officer
Ives testified that FPD’s policy is to wait no more than twenty minutes in
allowing another person to retrieve a car upon the custodial arrest of its
driver.  Second, Ives testified that the
car was parked “close to a stop sign,” which provides some evidence that the
car was impeding the flow of the traffic. And although the trial court did not
specifically find that appellant’s car was illegally parked, it did admit into
evidence photographs of appellant’s car, which demonstrate that the car was
parked quite close to the stop sign.[4]  See Tex. Transp. Code Ann. § 545.302(b)(4)
(Vernon 2011) (“An operator may not, except momentarily to pick up or discharge
a passenger, stand or park an occupied or unoccupied vehicle within 30 feet on
the approach to a . . . stop sign . . . .”).  Third, Ives arrested appellant for outstanding
warrants on traffic citations and transported him to the police station.  Thus, appellant’s detention “would likely be
of such duration as to require police to take protective measures.”  Compare
Fenton v. State, 785 S.W.2d 443, 445 (Tex. App.—Austin 1990, no pet.)
(holding that impoundment was not lawful where defendant was brought into
custody only to “determine if his license was suspended” and “give an
appearance bond” and evidence was undisputed that defendant possessed enough
money to make bond payment).  Viewing
this evidence in the light most favorable to the trial court’s ruling, we hold
that the evidence supports the trial court’s finding that the impoundment of
appellant’s car was lawful.

Appellant next argues that the search was “a pretext for an
evidentiary search.”  However, Officer
Ives testified that he decided to impound the car because FPD’s policy was “to
only allow 20 minutes” for “someone to come pick up the vehicle” and, prior to
towing a car, FPD’s policy was to “inventory the vehicle.”  Ives also testified that, prior to Detective
Rose inquiring about consent to search the car, he had already taken the keys
to appellant’s car because of his decision to impound the car and inventory its
contents.  Rose, who ultimately searched
appellant’s car, testified to FPD’s policy to inventory a car when it is towed
after a custodial arrest of the driver. 
Although Rose, on cross-examination, stated that he also believed that
he had authority to search the car due to consent and one of his reasons for
searching the car was “[t]o look for contraband,” he explained that he
conducted an inventory search in the same manner as a consent search.  Given that both officers testified to FPD’s
inventory policy, and their testimony established that the officers followed
that inventory policy, we cannot conclude that the search was merely the
pretext for an investigative search.  See Josey, 981 S.W.2d at 843–44 (holding
that testimony of officers was “sufficient to show that an inventory search
policy existed and that the policy was followed”).  Accordingly, we hold that the trial court did
not err in denying appellant’s motion to suppress evidence.

We overrule appellant’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Massengale, and Huddle.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 31.03(a),(e) (Vernon
2011).





[2]
          See U.S. Const.
amend. IV.

 





[3]
          See Tex. Const. art.
1, § 9.





[4]
          We note that the trial court
also found, and photographs in the record revealed, that the car was parked
“with wheels on one side of the car up on the curb.”