**Opinion issued January 17, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-10-00382-CR

_____

**DAGIM BISRAT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1056363**

## MEMORANDUM OPINION

A jury convicted Dagim Bisrat of the theft of property valued more than $100,000 and less than $200,000. The trial court assessed his punishment at thirty-five years' confinement. Bisrat appeals, contending that the trial court erred in denying his motion to suppress evidence seized pursuant to an unlawful arrest and

warrantless search. He further contends that the trial court erred in denying his motion to suppress, as impermissibly suggestive, the pretrial and in-court identifications made by three witnesses. Finding no error, we affirm.

## Background

The Schumacher Company repairs wind-turbine generator parts, known as transitions, for Siemens, Inc. In August 2005, a load of boxes containing transitions were awaiting shipment at the Schumacher loading dock. A man in blue coveralls, posing as a delivery driver, told several Schumacher employees that he had arrived to pick up the transitions. Employees helped him load the transitions on his truck and directed him to the shipping office to sign papers. Shortly after the fake driver left, the Siemens-authorized delivery driver arrived. The Schumacher employees realized that the first delivery driver in the blue coveralls had stolen the load of transitions.

David Mata, Jesse Castillo, and Robert Gonzalez, employees of Schumacher working on the loading dock that day, had each spoken with the thief. The next day, Paul Coselli, the president of Schumacher, met with Mata, Castillo, and Gonzales. Each of the employees described the thief as a six-foot-tall, black male wearing blue coveralls. They observed that the man spoke with an accent. Castillo and Gonzales both noted that the man was driving a white, flatbed Ford F-450 truck with side rails.

2

About four months later, an employee for F.W. Gartner, a business in the same industry as Schumacher, saw a white flatbed Ford F-450 with side rails at F.W. Gartner's shipping office. The employee recognized that the truck matched the description of the truck that the Schumacher thief had used. He blocked in the white Ford with two other trucks. In the shipping office, trying to pick up equipment from F.W. Gartner, was a black man wearing blue coveralls, later identified as Bisrat. When confronted, Bisrat announced that he was in the wrong place, and he tried to leave. F.W. Gartner employees restrained him and summoned a sheriff's deputy.

While Bisrat was at F.W. Gartner, an employee there called Coselli at Schumacher to tell him that F.W. Gartner had detained a man trying to steal equipment. The man matched the description of the person who had stolen the transitions from Schumacher. Coselli drove Mata and Gonzalez over to F.W. Gartner. When they arrived, several F.W. Gartner employees—and possibly a sheriff's deputy—had Bisrat restrained against a car, with his hands behind his back. Mata and Gonzalez saw Bisrat, and were immediately certain that he was the person who had stolen the transitions from Schumacher in August. He was wearing the same blue coveralls. Gonzalez also recognized Bisrat's white flatbed Ford as the same truck that the thief was driving when he stole the transitions from Schumacher. Mata, Gonzalez, and Castillo identified Bisrat in court as the man

3

they had spoken with at Schumacher.

Between the events at Schumacher and F.W. Gartner, Deputy Constable R. Avendano had been investigating three thefts from Houston businesses, including from Schumacher, committed by a black, six-foot-tall male, wearing blue coveralls and driving a white, flatbed Ford F-450 with side rails. His investigation had revealed that the thief used multiple license plates on the same Ford truck. Avendano had requested that law enforcement agencies in the area contact him if any of them found a person matching this description. A Harris County Sheriff's employee called Avendano to tell him that a deputy had detained a man matching this description trying to steal items from F.W. Gartner. Avendano sent Deputy Constable A. Matamoros to arrest Bisrat. Matamoros knew that Bisrat was a suspect in a theft case, but he was not aware of all details of the case.

When Matamoros arrived, he took custody of Bisrat from the sheriff's deputy and placed him in the backseat of Matamoros's patrol car. Matamoros called for a tow truck to take Bisrat's vehicle to a secured lot. Matamoros inventoried the truck before it was towed. In it, he found a set of license plates behind the driver's seat. Matamoros recognized the license plates as possible evidence. He called Avendano and told him about the license plates. Avendano checked the license plate numbers of both the license plates on the truck and the license plates from behind the seat. He determined that neither set belonged to a

4

Ford pickup nor was registered to Bisrat.

## Discussion

*Standard of Review*

We review a trial court's ruling on a motion to suppress for abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). When ruling on a motion to suppress, the trial judge is the exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We defer to a trial court's express or implied determination of historical facts, as well as to its application of law to fact questions, if those questions turn on the evaluation of a witnesses' credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo the application of the law to facts as determined by the trial court. *See id.*; *Wiede*, 214 S.W.3d at 25. We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

*Warrantless Arrest*

Bisrat first complains that the officers' search of his truck was premised on a

warrantless arrest, made without probable cause that violated his rights under the Fourth Amendment to the United States Constitution and under article I, section 9 of the Texas Constitution. *See Amores v. State*, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991).

To arrest a suspect, an officer must have probable cause to believe that the person arrested has committed or is committing an offense. *Id.* at 412. The State must prove the existence of probable cause. *Id.* at 413. Probable cause to arrest exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonable person to believe that the offender has committed or is committing an offense. *Id.*; *see Beverly v. State*, 792 S.W.2d 103, 104–05 (Tex. Crim. App. 1990). If the arresting officer acted upon a request for arrest from a fellow officer, we inquire into the information known to the officer who requested the arrest to determine if the police had probable cause to arrest the defendant. *Colston v. State*, 511 S.W.2d 10, 12 (Tex. Crim. App. 1974). The defendant's description and the circumstances under which the police find the defendant can support a probable cause decision if the description and surrounding circumstances match a recent series of similar crimes. *Carter v. State*, 713 S.W.2d 442, 447 (Tex. App.—Fort Worth 1986, pet. ref'd). In *Carter*, the defendant and his vehicle matched the description of the suspect and vehicle involved in a series of rapes. *Id.* at 444. The series of rapes had occurred when lone woman sales

representatives showed the suspect a model home. *Id.* The defendant in *Carter* was seeking a tour of a model home by a lone woman. *Id.* Those circumstances amounted to probable cause to arrest that defendant. *Id*

Bisrat observes that Matamoros did not have probable cause to arrest Bisrat, because Matamoros did not know why he was arresting Bisrat. However, Matamoros arrested Bisrat at Avendano's request. Therefore, the proper inquiry is whether Avendano had probable cause to arrest Bisrat. *See Colston*, 511 S.W.2d at 12. Avendano was investigating three thefts from businesses in the area by someone posing as a delivery driver. In each case, the suspect was a black, six-foot tall man, wearing blue coveralls, who drove a white, flatbed Ford F-450 with side rails. Someone at the Sheriff's Department had informed Avendano that a deputy had detained someone matching this description, driving the same type of truck, and attempting to steal items from another business. As in *Carter*, Bisrat and his vehicle matched the description of the suspect and vehicle involved in a series of recent crimes. *See Carter*, 713 S.W.2d at 447. Also, the police found Bisrat under circumstances suggesting he was attempting to commit a similar theft from F.W. Gartner. *See id.* From this, Avendano reasonably could have believed that Bisrat had committed the previous thefts and was attempting to steal equipment from F.W. Gartner. *See Amores*, 816 S.W.2d at 411; *Carter*, 713 S.W.2d at 447. Avendano thus had probable cause to arrest Bisrat.

*Impoundment and Search*

Bisrat's challenge to the search of his truck is similarly without merit. A search and inventory of the contents of an automobile pursuant to a lawful impoundment is a recognized exception to the prohibitions against warrantless searches in both the Fourth Amendment of the federal constitution and Article I, section 9 of the state constitution. *South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S. Ct. 3092, 3100 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980); *Lagaite v. State*, 995 S.W.2d 860, 865 (Tex.App.—Houston [1st Dist. 1999], pet. ref'd). An automobile may be impounded if the driver is arrested and his property cannot be protected by means other than impoundment. *Benavides*, 600 S.W.2d at 812. Inventories must be conducted in good faith pursuant to reasonable standardized police procedures. *Colorado v. Bertine*, 479 U.S. 367, 374, 107 S. Ct. 738, 742 (1987). Because an inventory search does not implicate the policies underlying the Fourth Amendment's warrant requirement, an inventory search of an automobile may include a search of closed containers in the automobile. *Id.* at 370–72, 107 S. Ct. at 740–41; *Moskey v. State*, 333 S.W.3d 696, 701–02 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

Because the officers lawfully arrested Bisrat and impounded his truck, the police were permitted to search his truck to inventory its contents. *See Opperman*, 428 U.S. at 375–76, 96 S. Ct. at 3100; *Lagaite*, 995 S.W.2d at 865. Although

Matamoros may have found the license plates inside a briefcase in the truck rather than in plain view, an inventory search may include a search of containers inside the automobile. *See Bertine*, 479 U.S. at 374, 107 S. Ct.at 742 (holding that an inventory search was proper when it included the officer opening and searching a closed backpack found behind the seat of a van); *Moskey v. State*, 333 S.W.3d at 701–02.

Accordingly, we hold that the trial court did not abuse its discretion in denying Bisrat's motion to suppress the evidence found in his truck.

*Suppression of Pretrial and In-court Identifications*

Finally, Bisrat challenges the trial court's admission of the Schumacher employees' pretrial and in-court identifications of him, arguing that they are tainted by an impermissibly suggestive identification procedure. Pretrial identifications under conditions that are impermissibly suggestive such that they create a substantial likelihood of irreparable misidentification violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution and must be excluded. *Barley v. State*, 906 S.W.2d 27, 33–34 (Tex. Crim. App. 1995). Single suspect show-up identifications can be impermissibly suggestive. *See e.g., Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967). But the due process right to exclusion of impermissibly suggestive eyewitness identification is implicated only if the police arrange the identification procedure or the

9

identification is at the request of the police. *Perry v. New Hampshire*, 565 U.S. ___, 132 S. Ct. 716, 724 (2012) (holding that pretrial identification of suspect in police custody outside an eyewitness's window was not arranged by the police and thus admissible). The purpose of excluding identification evidence obtained under suggestive circumstances is to deter law enforcement use of improper lineups, show-ups, and photo arrays. *Perry*, 565 U.S. at ___, 132 S. Ct. at 724. Such a purpose is not furthered by excluding identification evidence not elicited by the police. *Id.* In *Perry*, the Supreme Court noted that the traditional adversarial methods of testing the reliability of relevant testimony are available to challenge eyewitness identifications when no improper law enforcement occurred; it is thus the jury's province to weigh that sort of identification testimony. *Id.* at ___, 132 S. Ct. at 728–29.

Bisrat argues that Mata and Gonzalez's pretrial identifications were tainted by impermissibly suggestive identification procedures because they traveled to F.W. Gartner in December to identify Bisrat.[1] Although Bisrat may have been taken into police custody when they arrived, Mata and Gonzalez did not identify Bisrat at police request, much like the witness who peered through the window in *Perry*, nor did the police arrange for their arrival at the scene. *See Perry*, 565 U.S.

---

[1] Bisrat also complains that Castillo's identifications were tainted by police suggestion at F.W. Gartner, but Castillo was not present at F.W. Gartner when police apprehended Bisrat.

10

at \_\_\_, 132 S. Ct. at 724. Rather, Mata and Gonzalez went to F.W. Gartner at the request of their boss, Coselli, who had learned from an F.W. Gartner employee that Bisrat was being detained. Bisrat thoroughly cross-examined each of the witnesses who identified Bisrat to test the reliability of their identifications, asking about how long they interacted with Bisrat, how long it had been since the theft, and how certain they were that Bisrat was the man they saw at Schumacher. *See id* at \_\_\_, 132 S. Ct. at 728–29. The jury heard this evidence and weighed it accordingly.

For these reasons, we hold that the pretrial identifications were not tainted by police suggestion. Because the pretrial identifications were not impermissibly suggestive, the in-court identifications were also admissible. *See Loserth v. State*, 963 S.W.2d 770, 771–72 (Tex. Crim. App. 1998). Accordingly, the trial court did not err in denying Bisrat's motion to suppress the pretrial and in-court identifications.

## Conclusion

We hold that Avendano had probable cause to arrest Bisrat. We further hold that the pretrial and in-court identifications were not tainted by police suggestion. The trial court thus properly denied Bisrat's motions to suppress the evidence found in the truck and the pretrial and in-court eyewitness identifications. We affirm the judgment of the trial court.

                                        Jane Bland
                                        Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).